UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BARBARA A. HARLOW, | ) No. ED CV 06-112-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 8, 2006, seeking review of the Commissioner's denial of her applications for Supplemental Security Income payments ("SSI") and Disability Insurance Benefits ("DIB"). The parties filed a Consent to proceed before the undersigned Magistrate Judge on March 9, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 27, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 5, 1945. [Administrative Record ("AR") at 59.] She has a high school education and past work experience as a retail manager, production operator, and test driver. [AR at 80, 92-95, 98-100, 122.]

On August 21, 2002, plaintiff protectively filed her current applications for SSI payments and DIB, alleging that she had been unable to work since December 18, 2001, due to depression, anxiety, migraine headaches, and status post heart attack.[1] [AR at 14, 59-61, 70, 74, 343.] After a denial of her applications at the initial level and a partially favorable determination at the reconsideration level, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[2] [AR at 14, 49-52, 55-58, 344.] The hearing was held on July 20, 2004, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert and a medical expert also testified. [AR at 336-58.] On August 2, 2004, the ALJ issued a partially favorable decision. [AR at 10-21.] The ALJ found that plaintiff had been disabled since February 21, 2003, but not prior thereto. [AR at 20.] When the Appeals Council denied review on December 21, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] The application for SSI payments is not contained in the record. However, the hearing decision discusses the procedural history of the application. [AR at 14.]

[2] Although the DIB claim was denied initially and on reconsideration, the SSI claim was awarded on reconsideration, and plaintiff was given SSI payments as of March 2003. [AR at 53-54, 344.]

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[3] [AR at 19.] At step two, the ALJ concluded that, prior to February 21, 2003, plaintiff had "severe" impairments consisting of chronic obstructive pulmonary disease and hypertension. [Id.] The ALJ further found that, as of February 21, 2003, plaintiff had "severe" impairments of hypertension, status post myocardial infarction, chronic obstructive pulmonary disease, and adjustment disorder. [AR at 20.] At step three, the ALJ determined that plaintiff's impairments, prior to and as of February 21, 2003, did not meet or equal any impairment in the Listing. [AR at 19-20.] The ALJ further determined that, prior to February 21, 2003, plaintiff retained the residual functional capacity ("RFC")[4] to perform a full range of work with environmental limitations consisting of no excessive dust, fumes, gases, or sudden or severe

---

   [3]   The ALJ determined that plaintiff met the nondisability requirements for a period of disability and DIB, and was insured through June 30, 2002. [AR at 14, 19.]

   [4]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

temperature changes. [AR at 19.] However, she found that plaintiff retained, as of February 21, 2003, the following RFC: plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; had no limitations on sitting, standing, or walking; was precluded from sudden severe temperature changes, and should avoid excessive exposure to dust, fumes, and gases; and was precluded from complex detailed tasks requiring frequent changes in job routines, frequent contact with the public, or supervising others. [AR at 20.] At step four, the ALJ concluded that plaintiff was able to perform her past relevant work as a retail manager prior to February 21, 2003, but not thereafter. [Id.] At step five, the ALJ found, using the Medical-Vocational Guidelines, that plaintiff was disabled as of February 21, 2003 [id.], but that she was not disabled prior thereto. [AR at 20-21.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) failed to properly consider the opinions of plaintiff's treating physicians; (2) failed to properly rate plaintiff's mental impairment as required by law; (3) failed to properly consider the lay witness testimony; (4) failed to properly consider the impact of plaintiff's medications and their side effects on her ability to maintain employment; and (5) failed to apply the proper medical improvement standard of review for termination of disability benefits. Joint Stipulation ("Joint Stip.") at 2-3.  The Court agrees that the ALJ failed to properly consider the opinions of plaintiff's treating physicians as they pertain to the severity of her mental impairment, and remands the matter for further proceedings.[5]

---

[5] The results of the determination of Issue No. 1 on remand may impact Issue No. 2, and therefore Issue No. 2 will not be addressed at this time.  Issue No. 4 is unavailing because plaintiff did not assert which medication caused the side effects and how they limited her ability to work. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (a claimant has the burden of proving that an alleged impairment is disabling) (citing Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)). Issue No. 5 similarly lacks merit because this case is not a cessation case due to medical improvement.  Rather, the ALJ found that plaintiff was disabled since February 21, 2003, the date plaintiff suffered a myocardial infarction.  The issue presented here is whether plaintiff was disabled prior to February 21, 2003.
    In Issue No. 3, plaintiff argues that the ALJ failed to provide germane reasons for rejecting

**THE TREATING PHYSICIANS' OPINIONS**

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)). Where the treating

---

the statements made by plaintiff's daughter, Cara Harlow ("Cara"), in a Third Party Daily Activities Questionnaire completed on March 25, 2003. Joint Stip. at 12. This argument has no merit.

Plaintiff correctly notes that an ALJ must give germane reasons for rejecting lay testimony. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). Here, Cara's statements were cumulative of plaintiff's statements contained in her Daily Activities Questionnaire also completed on March 25, 2003. [AR 105-10, 111-16.] Both questionnaires indicated that plaintiff: needed help from Cara in caring for her personal needs; did not cook but rather Cara prepared her meals; did not shop; did not do any household chores but rather Cara did them; did not read; and needed Cara's assistance when walking outdoors. [AR at 105-07, 112-14.] These statements were in stark contrast to those made in a prior Daily Activities Questionnaire that plaintiff completed on September 21, 2002, i.e., five months prior to February 21, 2003. [AR 86-91.] In the prior questionnaire, plaintiff asserted that she had: no difficulty in caring for her personal needs; prepared her own meals; went shopping once a week without assistance; did all of the household chores without assistance; read everyday; and ventured outdoors four to five times a week without assistance. [AR 86-88.]

No evidence is presented in the record of any significant medical event that occurred between September 21, 2002, and February 21, 2003. Therefore, it is clear that Cara's statements concerning plaintiff's alleged, drastic decline in her daily activities pertained to the time period since February 21, 2003. As disability benefits have been awarded for plaintiff's impairments as of February 21, 2003, Cara's statements were not probative of the time period relevant to this review, i.e., prior to February 21, 2003. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (an ALJ need not discuss all evidence but must explain why "significant probative evidence has been rejected") (citing Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981)). Accordingly, although the ALJ failed to provide reasons for the rejection, any error was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).

6

physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted, the ALJ may reject it in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). To meet this standard, the ALJ need not discuss all of the evidence presented but must explain why he rejected "significant probative evidence." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citing Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981)).

The record in this case documents plaintiff's complaints of depression and migraine headaches since 1997.[6] [AR at 137-38.] Although her treating physicians were neither psychiatrists nor psychologists, they prescribed her medication such as Prozac, Elavil, and Fiorinal. [AR at 137-38, 205, 207-09, 333.] On August 1, 1997, plaintiff complained of migraine headaches, which she claimed were worse when she is stressed. [AR at 137.] Dr. Ewing noted that plaintiff had positive photophobia and positive sensitivity to noise, and prescribed Fiorinal. [Id.] Then, on July 5, 2000, plaintiff reported feeling stressed and depressed from taking care of her elderly parents and her grandson.[7] [AR at 126.] On December 21, 2001, she also reported that she was experiencing depression, crying spells, decreased appetite, anhedonia, and stress. [AR 208.] The physician prescribed Paxil for her depression and anxiety. [Id.]

The medical record from March 1, 2002, notes plaintiff's complaints of depression, lack of energy, decreased appetite, migraines lasting for three to four days, and that she was tearful at times. [AR at 207.] However, plaintiff reported no weight loss, lack of concentration, or hallucinations. [Id.] The physician recorded that plaintiff displayed positive photophobia. Thereafter, the physician prescribed Amitriptyline and referred plaintiff to outpatient mental health services. [Id.] However, plaintiff did not go to mental health services to receive care for her depression. Moreover, the physician explained in his May 1, 2002, clinic notes that he would not

---

[6] However, the record is bereft of any complaints of mental impairment from September 1997 to June 2000.

[7] It appears that plaintiff's daughter left the care of her son to plaintiff. [AR at 126.]

fill out plaintiff's disability papers because, although "[h]er medical condition is depression," she was able to perform all of her activities of daily living and refused to go to mental health services in order to receive appropriate treatment. [AR at 206.] The physician also noted that plaintiff was depressed because her daughter, who lived with plaintiff, lost custody of her son (i.e., plaintiff's grandson). [Id.] Despite plaintiff's refusal to seek mental health services, the physician continued to provide medication for plaintiff's depression. [AR at 205.]

On May 28, 2002, Dr. Michael Bishara, an internal medicine physician, completed a Supplemental Certification for the Employment Development Department, diagnosing plaintiff with depression and finding her disabled until September 30, 2002. [AR at 223.] Dr. Bishara noted that plaintiff had difficulty sleeping and lacked energy. [Id.] He also asserted that the medication given to plaintiff was not working. [Id.] Dr. Bishara continued to treat plaintiff for depression by providing medication (i.e., Effexor, Zoloft). [AR at 333-35.] He noted plaintiff's continued complaints of depression and stress due to family issues (i.e., involvement in legal dispute to regain custody of her grandson). [Id.] In particular, on February 14, 2003, Dr. Bishara commented that plaintiff's depression was getting worse. [AR at 335.]

In the hearing decision, the ALJ determined that plaintiff's "severe" impairments, prior to February 21, 2003, were hypertension and chronic obstructive pulmonary disease. The ALJ thus implicitly rejected plaintiff's alleged mental impairment as not "severe." [AR at 19.] Consequently, the ALJ found that plaintiff did not have any mental limitations. [Id.] As support, the ALJ mentioned that plaintiff had "offered very little objective medical evidence of a medically determinable impairment or impairment related limitations prior to her date last insured." [AR at 15.] Furthermore, she noted the hearing testimony of Dr. Sami Nafoosi, a medical expert in internal medicine, who opined that, prior to February 21, 2003, plaintiff had nonsevere adjustment disorder. [AR at 17.]

Plaintiff contends that the ALJ erred by ignoring, without comment, the medical records by plaintiff's treating physicians. Joint Stip. at 3-4. She argues that the ALJ was required to provide specific and legitimate reasons for rejecting the treating physicians' opinions. Joint Stip. at 5.

Here, the treating physicians did not opine to any mental functional limitation that had lasted or was expected to last for a continuous period of at least twelve months.[8] Hence, there was no opinion on this issue to reject. Therefore, to the extent plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the treating physicians' opinions of disabling depression, the argument is unavailing. But the ALJ should have considered the treatment notes to determine whether plaintiff had "severe" mental impairments.

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (citing Smolen, 80 F.3d at 1290).

As summarized above, during the relevant time period at issue -- i.e., from December 18, 2001, the onset date, through February 20, 2003, the day before the finding of disability -- plaintiff sought treatment for her mental ailments on numerous occasions. Specifically, the record shows that from July 5, 2000, until February 20, 2003, plaintiff complained of depression, stress, or migraine headaches on approximately nine occasions.[9] [AR at 126, 205, 207-09, 333, 335.] Plaintiff was given medication for her mental ailments. [Id.] Moreover, Dr. Bishara noted that the medication given to plaintiff was not working and that her depression was "getting worse." [AR at 223, 335.] Even though these treatment notes suggest that plaintiff may have had "severe"

---

[8] As noted above, only Dr. Bishara provided an opinion of disability, albeit a temporary disability, with no assessment of specific functional limitations. [AR at 223.] The other treating physicians simply recorded plaintiff's complaints of depression and anxiety, and prescribed medication.

[9] The medical record from July 5, 2000, is included in this analysis because it is relevant to what could have led to plaintiff's alleged disability on December 18, 2001. In any event, even if only the time period beginning on December 18, 2001, and ending on February 20, 2003, is analyzed, plaintiff still sought treatment approximately eight times.

depression, the ALJ did not consider or comment on these notes in her decision.[10] [AR at 15, 17.] See Vincent, 739 F.2d at 1394-95 (an ALJ need not discuss all evidence but must explain why "significant probative evidence has been rejected") (citing Cotter, 642 F.2d at 706).  Accordingly, remand is warranted for consideration of the treatment notes prior to February 21, 2003, as they relate to plaintiff's allegations of depression.  See 20 C.F.R. §§ 404.1545(e), 416.945(e) (when assessing a claimant's residual functional capacity, an ALJ must "consider the limiting effects of all of [the claimant's] impairment(s), even those that are not severe.").

/
/
/
/
/
/
/
/
/
/
/
/
/

---

[10] Even Dr. Nafoosi, whose testimony the ALJ apparently relied upon, did not discuss these treatment notes in determining that plaintiff did not have a "severe" mental impairment. [AR at 347-49.] In considering plaintiff's mental impairments, Dr. Nafoosi only noted the findings of Dr. Goldman's consultative examination that was conducted on December 2, 2002. [Id.] The ALJ also noted the consultative examination of Dr. Goldman, from which Dr. Goldman concluded, among other things, that plaintiff suffered from adjustment disorder with mixed anxiety and depression, and had mild, mild to moderate, and moderate difficulties and impairments in various areas of functioning. [AR at 15, 146-49.] The ALJ, apparently substituting her opinion for that of the consulting physician, rejected this assessment in part as "overly restrictive in light of the relatively benign mental status exam," and for lack of psychiatric treatment or counseling. [AR at 15.] The ALJ also rejected the state agency psychiatrist's conclusion that plaintiff was slightly to moderately limited in a number of areas, as it was based on Dr. Goldman's assessment. [AR at 16, 150-57.]

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to assess the treatment notes from plaintiff's treating physicians, including Dr. Bishara, and to consider their impact on the severity of plaintiff's mental impairment. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: December 11, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE